IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

**Civil Action No. 16-cv-01340-MSK-CBS**

**JOSIE TAPEST,**

    **Plaintiff,**

v.

**PS CAMPING, INC., d/b/a Prospectors RV Resort;**
**RHOJO ENTERPRISES, LLC;**
**RHONDA SCHIRADO; and**
**MICHAEL SCHIRADO**

    **Defendants.**

---------
and
---------

**Civil Action No. 16-cv-01960-MSK-NYW**

**TRISHA KAWAHAKUI;**
**RYAN LESSARD,**

    **Plaintiffs,**

v.

**PS CAMPING, INC., d/b/a Prospectors RV Resort;**
**RHONDA SCHIRADO, and**
**MICHAEL SCHIRADO,**

    **Defendants.**

_____

**OPINION AND ORDER GRANTING MOTION TO CONSOLIDATE AND MOTION TO DISMISS**
_____

    **THIS MATTER** comes before the Court pursuant to Motions to Consolidate Cases, filed by the Plaintiffs in both cases (**# 24** in -1340; **# 9** in -1960), and the Defendants' responses (**# 28**

1

in -1340, **# 16** in -1960). In addition, in the -1960 case, the Defendants have filed a "Motion to Dismiss or, in the alternative, for Summary Judgment" **(# 14)**, to which the Plaintiffs in that case responded **(# 18)**, and the Defendants replied **(# 26)**; and the Defendants filed an unopposed Motion for Leave to Restrict **(# 17)** certain exhibits attached to their Motion to Dismiss.

## FACTS

The pertinent facts, as derived from the two Complaints, are fairly similar. Defendants Rhonda and Michael Schirado jointly own PS Camping, Inc. ("Prospectors"), an RV park.

Prospectors hired Ms. Tapest to work in its business office as an Office Manager in April 2014.Ms. Tapest alleges that her duties were to respond to guest issues, and that she often worked as many as 300-350 hours per month, plus additional time when she was not actively working but was "on-call". She alleges that Prospectors only paid $ 5.00 per hour for her time, and failed to provide her with overtime pay at a time-and-a-half rate when her hours in a week exceeded 40. She asserts two identified claims, one under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; and one under the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-6-101 *et seq.*, but alleges a number of discrete violations of each statute. For example, Ms. Tapest alleges that the Defendants violated the FLSA by failing to pay minimum wage, failing to pay overtime, making improper deductions from her pay for board and lodging, failed to make timely payment of wages, and failed to keep appropriate records. Ms. Tapest also alleges claims for retaliation under both statutes, in that she contends that after she initially filed this action, one or both of the Schirados contacted her new employer and disparaged her and attempted to procure her termination from that employment.

Ms. Kawahakui and Mr. Lessard were also employed by Prospectors for periods of time in 2016. Ms. Kawahakui worked as a Housekeeper, and Mr. Lessard was a Maintenance Person.

2

Both allege that Prospectors paid them a wage of $ 5.00 per hour,[1] below the statutorily-required minimum, that it failed to pay them premium pay for periods in which they worked in excess of 40 hours per week, and that it failed to keep adequate time records. Both also allege that, when they complained to the Defendants about the situation, the Defendants retaliated against them by falsely suing them for allegedly unpaid back rent and by evicting Ms. Kawahakui from lodging that the Defendants had been providing her. The allege the same FLSA and CWCA claims that Ms. Tapest asserts, plus additional claims for unlawful retaliation in violation of the FLSA and CWCA. Ms. Kawahakui also asserts a common-law claim for breach of contract, arising from an agreement she had with the Defendants to provide a residence during her employment that particular utilities.

## ANALYSIS

### A. Consolidation

Citing to the common issues of fact and law that underlie their claims, the parties in both actions seek to consolidate the cases into the lower-numbered action, the -1340 case, pursuant to D.C. Colo. L. Civ. R. 42.1. The Defendants concede that both actions share certain common questions of fact and law, but argue that each case also has individualized issues of fact and law that will differ from those in the other case, presenting issues of potential administrative or jury confusion. Moreover, the Defendants note that Ms. Kawahakui and Mr. Lessard's case raise additional claims of retaliation and breach of contract not found in Ms. Tapest's case.

It is well-settled that a court may, in its discretion, consolidate cases that share any common question of fact or law, in order to achieve appropriate efficiencies. Fed. R. Civ. P. 42(a). Here, there are certainly questions of fact and law common to both cases, including the

---

[1]   After Ms. Kawahakui complained, Prospectors raised her hourly wage to $ 8.50 per hour, but continued to fail to pay her time-and-a-half wages for overtime hours.

3

question of whether the Defendants' pay practices that applied to all Plaintiffs violate the FLSA and CWCA, as well as questions of whether the Defendants are legally entitled to claim certain defenses to those acts – defenses that would also apply to all of the Plaintiffs here.  The mere fact that there are additional questions of individualized significance does not convince the Court that those questions outweigh the efficiencies that can be gained by consolidation, nor is the Court troubled by hypothetical concerns of jury confusion or other administrative difficulties in administering a consolidated action.  Indeed, a consolidated action containing all of the claims by all Plaintiffs here would resemble any number of multi-plaintiff employment cases that this Court routinely handles, many of which often have both common and individualized claims and issues.

Accordingly, the Court grants the Plaintiffs' Motions to Consolidate.  Moreover, the Court finds that, given the predominance of common questions of law and fact in both cases, there is no real benefit to continuing to maintain a separate identity for the -1960 case following consolidation.  There is no reason why Ms. Kawahakui and Mr. Lessard's claims cannot simply be folded into Ms. Tapest's action, and the -1960 case closed thereafter.  Thus, the Court will deem Ms. Tapest's Amended Complaint **(# 14** in -1340**)** to be amended by any unique allegations found in Ms. Kawahakui and Mr. Lessard's Amended Complaint **(# 8** in -1960), and the caption of the -1340 case will be amended to reflect the names of all three Plaintiffs.  The Court will deem the Defendants' Answer in Ms. Tapest's case to be amended similarly.  Thereafter, all further proceedings will occur only in the -1340 case.

### B.  Defendants' Motion

The Defendants move to dismiss the claims by Ms. Kawahakui and Mr. Lessard in a hybrid motion that invokes Fed. R. Civ. P. 12(b)(1), 12(b)(6), or 56.  The crux of the motion is

the Defendants' argument that Ms. Kawahakui and Mr. Lessard failed to adequately plead (or, perhaps, cannot establish) the predicates for FLSA coverage of Prospectors: that their employment with Prospectors makes them "engaged in [interstate] commerce" under 29 U.S.C. §§206(a) and 207(a)(1). Further, to the extent that these Plaintiffs rely upon an "enterprise" theory to tie several of the Schirado's business ventures into a single entity for FLSA coverage purposes, *see* 29 U.S.C. § 203(r)(1), they cannot show that such an "enterprise" had gross annual revenues in excess of $ 500,000 as required by 29 U.S.C. § 203(s)(1). *See generally Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295 n. 8 (1985) (FLSA plaintiff may show that he or she is covered under the FLSA via either the "individual" [*i.e.* "in commerce"] provision or the "enterprise" provision).

Before beginning its analysis, the Court pauses to register its strong discouragement of hybrid motions that seek either dismissal under Rule 12 "or, in the alternative," summary judgment under Rule 56. The analytical standards that apply to each rule are sharply different and, in significant ways, fundamentally incompatible with each other. Thus, motions which purport to present the same arguments under both rules usually fail to correctly apply one or both standards. Such motions thus foist the analytical lifting onto the Court, requiring the Court to evaluate the arguments being made, select the correct procedural rule, and comb the record to extract only those arguments that properly apply the correct standard.

This Court declines to do so here. The Court agrees with the Plaintiffs that this is not properly a motion under Rule 12(b)(1), as the Supreme Court has made clear that pleading defects will not be considered to implicate subject-matter jurisdiction except in situations where Congress has explicitly characterized the pertinent statutory requirement as having jurisdictional significance. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2000) (interpreting Title VII's

applicability to employers having at least 15 employees as non-jurisdictional).[2]  The Court also rejects the Defendants' suggestion that the motion should be evaluated under Fed. R. Civ. P. 56, insofar as the limited factual record that the Defendants have provided does not fully reflect all of the facts that are both pertinent to the question – specifically, the question of whether the job duties performed by the Plaintiffs touch on interstate commerce – even though such facts would be within the Defendants' own knowledge.  Fed. R. Civ. P. 56(c)(1)(A) requires a summary judgment movant to support its factual contentions – here, the contention that the Plaintiffs are not employed in interstate commerce – with specific evidence establishing that proposition.  Because the Defendants have not done so, the Court declines their request to treat their motion as one for summary judgment under Rule 56.

Accordingly, the Court will consider the Defendants' motion only as one under Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  The Court must limit its consideration to the four

---

[2]  *Arbaugh* certainly disposes of any argument by the Defendants that the $ 500,000 in annual revenues requirement for enterprise liability is jurisdictional in nature.
 The question is more subtle as to the requirement that the Plaintiffs' employment place them "in commerce."  A nexus to interstate commerce is the very fact that allows federal regulation of wages and hours; there is no suggestion that the Constitution authorizes Congress to regulate wages and hours of purely intrastate employment through some other mechanism.  This suggests that a direct "in commerce" element found in 29 U.S.C. § 206 and 207 may be more "jurisdictional" in nature than an element that Congress has established as an indirect proxy for presuming the presence of interstate commerce, such as having a sufficient number of employees or a sufficient amount of annual revenues.  Thus, it may be that *Arbaugh* is distinguishable when it comes to the FLSA's statutory requirement that a plaintiff employee be employed "in commerce."  However, because the Defendants have not materially developed such an argument in this case, this Court will not explore it *sua sponte*.

corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001). A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Guided by *Arbaugh*'s indication that the "in commerce" requirement is an element of the Plaintiffs' claims, the Court turns to the question of whether the Plaintiffs have adequately alleged facts indicating that their employment was "in commerce." The FLSA defines "commerce" as "trade, commerce, [or] transportation . . . among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). To satisfy this requirement, the Plaintiffs must plead facts showing that they "directly participate[d] in the actual movement of persons or things in interstate commerce." *Reagor v. Okmulgee County Family Resource Ctr.*,

7

501 Fed.Appx. 805, 809 (10th Cir. 2012), *citing Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).  The inquiry focuses on the particular tasks performed by the Plaintiffs themselves, not on the general nature of the Defendants' operations.  *Id.*

The Court agrees with the Defendants that, as currently pled, the Plaintiffs Amended Complaint fails to sufficiently allege facts detailing how Ms. Kawahakui and Mr. Lessard's job duties brought them into contact with persons or things moving in commerce.  The only allegation in the Amended Complaint in the -1960 case that even uses the word "commerce" is Paragraph 10, which offers only the conclusory assertion that Prospectors "was engaged in interstate commerce."  Nothing in that pleading purports to describe what tasks Ms. Kawahakui and Mr. Lessard performed, beyond offering the simple labels that she worked as a "housekeeper and general laborer" and that he worked as a "maintenance person and general laborer," and thus, the Court cannot meaningfully infer that their job duties would call upon them to act in commerce.  *Compare Reagor*, 501 Fed.Appx. at 809-10 (mere fact that employee provided local services to customers of a facility that housed persons from out of state did not necessarily render employee's services to be "in commerce").  It may be that the Plaintiffs can ultimately plead sufficient facts to support Ms. Kawahakui and Mr. Lessard's FLSA claims, but at this stage of the litigation, they have not done so.

Ms. Kawahakui and Mr. Lessard's briefing does not meaningfully contend to the contrary – they acknowledge that their pleading is "admittedly sparse."  Even that appears to be somewhat of an overstatement, and the Court is somewhat troubled by their Fed. R. Civ. P. 11(b)(2) and (3) implications of their decision to oppose the Defendants' motion, rather than simply conceding the deficiency of their pleading and seeking leave to replead.  They also argue that requiring them to specifically allege how their job duties rendered their employment as being "in

8

commerce" imposes some sort of "heightened pleading" standard upon them, an argument that is similarly frivolous.

The Court need not extensively consider the Plaintiffs' alternative approach of demonstrating FLSA coverage through Prospector's involvement in an "enterprise" grossing more than $ 500,000 annually.  The Amended Complaint asserts that fact in purely conclusory terms.  Admittedly, a conclusory allegation of this type might suffice if it were coupled with some factual showing of the basis for the Plaintiffs' knowledge of that fact or some other indicia that suggest that it is something more than a speculative, boilerplate assertion.  *Compare Garza v. Western Stone of Lyons, LLC*, D.C. Colo. Civ. Case No. 14-cv-1953-REB-NYW, Docket # 51 at 2 ("On the basis of 'information and belief,' Plaintiff alleges that 'based on the size of Defendant Western Stone's operations and the cost of materials used by Western Stone, Western Stone had annual revenues in excess of $ 500,000'").  Here, the Plaintiffs offer nothing more than the naked assertion of fact, and thus, the Court is unable to find that fact to be well-pleaded at this stage.

Accordingly, the Court grants the Defendants' motion to dismiss and dismisses Ms. Kawahakui and Mr. Lessard's FLSA claims.  Moreover, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over their state-law claims in the absence of any federal FLSA claim by them.[3]

However, the Court will stay the effect of that dismissal for a period of 14 days, during which the Plaintiffs may file a Second Amended Complaint that cures the pleading defects in Ms. Kawahakui and Mr. Lessard's FLSA claims.

---

[3] The Court does not consider Ms. Tapest's extant FLSA claim sufficient to support the exercise of supplemental jurisdiction over Ms. Kawahakui and Mr. Lessard's purely state-law claims.

### C. Motion to Restrict Access

The Defendants move to restrict public access to certain exhibits attached to their motion, namely, income statements and tax returns for Prospectors over two years. They assert that "competitors, vendors, employees, lenders, investors, strategic alliances, and others could view [this] information in a way that could result in business loss, loss of investments, loss of important contracts, partnerships or alliances, and/or could otherwise cause serious harm to the business."

The Supreme Court acknowledged a common law right of access to judicial records in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). It is within the district court's discretion to determine whether a particular court document should be sealed. *See Nixon*, 435 U.S at 599.

Here, the Court would not be persuaded that Prospectors' interest in keeping its financial condition private outweighs the public interest in ensuring that this Court is properly applying the "enterprise' test. The issue of Prospectors' revenues[4] is central to the issues that were

---

[4] The Defendants' boilerplate assertion that "no alternative to restricted access is practicable" is misplaced. The requisite factual inquiry dictated by the FLSA is into Prospectors' <u>revenues</u>. As such, redaction of its tax returns to omit line items for cost of goods sold, profits,

10

presented to the Court for resolution and, assuming the Court reached those issues, the evidence upon which the Court based its determination regarding those revenues would thus be of substantial public interest.  On the other hand, Prospectors' claimed risk of harm from public disclosure of its financial information is generalized and speculative.   Accordingly, the Court would have denied the motion.

However, because the Court did not treat the Defendants' motion as one for summary judgment, it did not consider the evidentiary material submitted by the Defendants.  There is no meaningful public interest in having access to documents that the Court did not consider or rely upon.  *Riker v. Federal Bureau of Prisons*, 315 Fed.Appx. 752, 755 (10th Cir. 2009).  Thus, the Court will deny the Defendants' motion as moot, allowing the documents in question to remain under the existing restrictions.

## CONCLUSION

For the foregoing reasons, the Motions to Consolidate Cases (**# 24** in -1340; **# 9** in -1960) are **GRANTED**.  The two captioned cases are **CONSOLIDATED** and all further proceedings shall occur in the -1340 case.  The caption of that case is **AMENDED** to reflect the addition of Ms. Kawahakui and Mr. Lessard as Plaintiffs in that action, and the Clerk of the Court shall close the -1960 case. The Defendants Motion to Dismiss (**# 14** in the -1960 case) is **GRANTED**, but the effect of that ruling is stayed for 14 days, during which the Plaintiffs may file a Second Amended Complaint that adequately pleads claims by Ms. Kawahakui and Mr. Lessard.  The

---

and various other entries would be appropriate.  Such redactions could significantly diminish the harm that could inure to Prospectors as a result of public disclosure of its exhibits, and thus, diminish the need for restricted public access

Defendants filed an unopposed Motion for Leave to Restrict (**# 17** in -1960 case) is **DENIED AS MOOT**.

Dated this 25th day of October, 2016.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge