## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-01340-MSK-CBS

JOSIE TAPEST,
TRISHA KAWAHAKUI, and
RYAN LESSARD

      **Plaintiffs,**

v.

PS CAMPING, INC., d/b/a Prospectors RV Resort;
RHOJO ENTERPRISES, LLC;
RHONDA SHICRADO, and
MICHAEL SCHIRADO,

      **Defendants.**

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR FEES AND COSTS

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for Attorney Fees and Costs (**# 56**), the Defendants' response (**# 61**), and the Plaintiffs' reply (**#62**).

The Court assumes the reader's familiarity with this case. It is sufficient to note that this is an action brought by three individuals under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and Colorado state law, alleging that their employer – collectively, the Defendants – failed to pay them statutorily-required minimum wage and overtime payments, among other things. All three Plaintiffs also alleged that the Defendants retaliated against them for having made complaints about the missing payments. Eventually, the parties resolved their disputes via settlement (**# 50**). That settlement reflected that the parties were unable to agree as to the appropriate amount of attorney fees and costs to be awarded to the Plaintiffs pursuant to 29

U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").[1]  They agreed that the Plaintiffs would move for an award of fees before the Court, and the parties have now fully briefed that dispute.

Before turning to the familiar "lodestar" analysis that governs this Court's review of fee requests, the Court pauses to address the Plaintiffs' argument that a reasonable attorney fee should be calculated according to an alternative measure.  The Plaintiffs contend, for various reasons that the Court need not repeat here, that an appropriate means of assessing the reasonableness of a fee award is to ignore traditional billing records and instead award fees according to a "menu" of "delivered items that counsel contends Defendants 'ordered' in this case."  The "menu," attached as Exhibit 1 to the Plaintiffs' motion, describes various discrete steps that might be undertaken in a lawsuit and ascribes a "unit price" for fees and costs that would be incurred for performing each task. (*e.g.* writing a demand letter, $1,500 in fees, $0.00 in costs; defending a deposition of the client, $4,000 in fees, $600 in costs; opposing a motion to dismiss, $4,000 in fees, $0.00 in costs, etc.).  It is unclear, based on this record, what the menu charges are based upon – estimated time spent or some other measure.  The Plaintiffs have not come forward with an affidavit from the person who correlated the unit prices to the tasks, explaining how the figures were derived.  In addition, it is clear that this "menu" approach is not the basis on which the Plaintiffs' counsel billed the Plaintiffs[2]  The menu approach also is

_____

[1]  Although the parties could have agreed upon an alternative method for the Court to use in determining an appropriate fee award, their settlement agreement contemplates that the Court will consider the question "as if resolution of this case had occurred via a Rule 68 offer of judgment."  In such circumstances, judgment would enter against the Defendants and the fee-shifting provisions of 29 U.S.C. § 216(b) would become effective.

[2]  The Plaintiffs have submitted an affidavit from their counsel, but that affidavit makes no mention of counsel routinely employing a menu-based fee structure for any client, much less for

inconsistent with how counsel accounted for their time, as counsel has also tendered traditional hourly-based billing records.[3]  Under these circumstances and due to deficiencies in the record, the Court declines to accept the Plaintiffs' invitation to reshape well-settled law governing the calculation of fee awards.  *See Perdue v. Kenny A*, 559 U.S. 542, 556 (2010) ("As we have noted, the lodestar was adopted in part because it provides a rough approximation of general billing practices, and accordingly, if hourly billing becomes unusual, an alternative to the lodestar method may have to be found. However, neither respondents nor their *amici* contend that that day has arrived").

Accordingly, the Court analyzes the Plaintiffs' entitlement to fees under the traditional lodestar method.   To apply the lodestar analysis, the Court calculates a "lodestar" figure by multiplying a reasonable hourly rate by the number of hours reasonably incurred by Mr. Gutierrrez's counsel. *See generally Gisbrecht v. Barnhart,* 535 U.S. 789, 801–02 (2002) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence"); *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Second, the Court addresses whether that lodestar figure should be adjusted upwards or downwards based on the particular circumstances of the case, although adjustments to the lodestar figure are made only in unusual situations. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65 (1986). The goal of the exercise is to produce "an award that roughly approximates the fee

---

the Plaintiffs here.  To the contrary, Ms. Dodson, the Plaintiffs' lead counsel, states that "most of my cases are [on] contingency," meaning that her fees are calculated as a percentage of the recovered amount, not according to any menu.  Ms. Dodson mentions that she "occasionally" performs non-contingent work at a "flat fee . . . generally in the $500-$3000 range," but this does not appear to be litigation work (the example Ms. Dodson gives is for reviewing employment contracts for clients).

[3]       The record here contains traditional time-based billing records for services that counsel performed on behalf of the Plaintiff, further discrediting the notion that a "menu"-based fee structure was employed here.

that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A ex rel. Winn,* 559 U.S. 542 (2010). The applicant seeking fees bears the burden of demonstrating that the hours expended and rates charged are reasonable. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir.1986).

Here, the Plaintiffs request a total of $58,799.05 in fees for hours expended by their attorneys Penn Dodson and Alexander Gastman, plus the work of a paralegal, Tara Hodges.  Mr. Dodson seeks compensation at a rate of $400-450 per hour, for a total of 23.64 hours; Mr. Gastman seeks compensation for approximately 144 hours at a rate of at a rate of $325 per hour; Ms. Hodges billed 34.8 hours, typically[4] at a rate of $125 per hour.  In addition, the Plaintiffs seek a total of $3,180.20 in costs.

### A.  Hourly rates

The Defendants contend that the hourly rates sought for Ms. Dodson and Mr. Gastman are excessive.  They cite to fee awards in other FLSA cases decided in this District between 2013 and 2015, where various judges approved hourly rates of between $250 and $300 for attorneys. In reply, the Plaintiffs cite to non-FLSA cases from this District approving hourly rates of $375-$400 per hour.

To determine the appropriate hourly rate, the Court looks to "the prevailing market rate" for similar services "in the relevant community" – that is, the District of Colorado.  *Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006).  The burden is on the Plaintiffs to establish the hourly rate charged by local lawyers with similar skill and experience in the relevant field of

---

[4]      A handful of Ms. Hodges time entries are billed at per-unit costs of between $5 and $45 for tasks such as "Formatted letter to clients" ($25), "prepared letter (made edits)/Mailed & EM'ed letter, SA, and W9 to client" (three entries at $15 each); and "ECF filed notice of motion, memo or law, order, and COS" ($45).

litigation.  The Plaintiffs must "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill."  *Guides, Inc. v Yarmouth Group Property Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).

As noted above, the only evidentiary material the Plaintiffs offer here in support of their claimed hourly rate is the affidavit of Ms. Dodson and Mr. Gastman, and such affidavits do nothing more than recite Ms. Dodson and Mr. Gastman's rates.  The Plaintiffs offer no affidavits of Colorado-based counsel or present a survey of local rates.  Even their own quoted rates are of dubious assistance here because they practice out of New York City, and the Court infers that their quoted rates are reflective of the prevailing hourly rates of that market, not necessarily of the District of Colorado.  Thus, on the present record, the Plaintiffs have come forward with no evidence of prevailing local rates in similar types of cases.

Where the Court lacks adequate evidence of prevailing market rates, it may look to other relevant factors for guidance.  *Id.* at 1079.  Here, both parties have cited the Court to decisions by other judges in this District in various cases, and the Court will consider those to assist in its decision.  As between the parties' cited cases, the Court finds the cases cited by the Defendants to be more significant, as those cases entailed the same subject matter as this one: violations of the FLSA.  *See e.g. Martinez v. Red's Towing*, 2015 WL 4504775 (D.Colo. July 23, 2015) *and Albu v. Delta Mechanical*, *Inc.*, 2015 WL 4483992 (D.Colo. Jun. 30, 2015).  By contrast, the cases the Plaintiffs rely on are breach of insurance contract actions, a field of litigation that calls upon different skills and presents different demands than wage and hour litigation.  Thus, on the extremely limited record before the Court, the Court finds that rates of $300 per hour for an attorney with Ms. Dodson's experience and qualifications reflects the prevailing rate for FLSA

litigation in this District, and that $250 per hour reflects the prevailing rate for counsel with Mr. Gastman's level of experience.

The Defendants did not challenge the appropriateness of the $125 per hour rate charged for Ms. Hodges' time, and in the absence of any challenge, the Court adopts that rate as well.

### B. Reasonable hours

The Defendants contend generally that the Plaintiffs' billing records "contain duplicative, excessive, and otherwise unnecessary fees." Specifically, they take issue with: (i) claims for 5.6 and 5.8 hours for preparing Ms. Tapest's original and amended Complaints; (ii) 15.3 hours claimed for preparing "a nearly identical Complaint on behalf of Ms. Kawahakui"; (iii) "48.8 hours expended between filing the second action, filing an amended complaint in response to Defendants' motion to dismiss, and consolidating the two actions thereafter"; and (iv) a general contention that the time spent by Mr. Gastman on preparing for depositions and preparing the fee petition was excessive.[5]

The Court has some difficulty squaring the Defendants' contentions with the billing records provided by the Plaintiffs, particularly insofar as the Defendants did not identify (*e.g.* by date) the particular billing entries they refer to. The Court's review of the billing records reveals only two entries totaling 1.36 hours that specifically refer to the preparation of Ms. Tapest's complaints: Ms. Dodson's 5/5/16 entry (.36, "Draft pleadings –finalize cplt") and Mr. Gastman's 6/30/16 entry (1.0, "Draft, review and revise Amended Complaint"). To the extent the Defendants believe that additional entries that do not bear text referring to a "complaint" for Ms. Tapest exist, the Court is unable to locate them. Similarly, the Court can only locate two time

---

[5] The Defendants also take issue with the Plaintiffs having made redactions of certain matters in their billing records. Because the Plaintiffs did not submit unredacted versions for the Court's review, the Court will simply treat the redacted material as non-existent and will evaluate the sufficiency of the records solely on that information that is publicly-viewable.

entries, totaling 2 hours, relating to the preparation of Ms. Kawahakui's Complaint: Mr. Gastman's 7/27/16 entry (1.8, "Draft Complaint"), and Mr. Gastman's 8/1/16 entry (.2, "Draft, review and revise: Complaint"). The Court cannot say that any of these entries are unreasonable.

The Court declines to consider whether the expenditure of 48.8 hours from the August 2, 2016 filing of Ms. Kawahakui's action and the Oct. 25, 2016 consolidation of that case with the instant matter is inherently unreasonable. It is not sufficient for the Defendant to simply complain that a certain number of hours expended over a nearly three-month period is excessive; rather, the Defendants must identify particular entries or groups of entries that are allegedly excessive and explain why they believe that. In any event, the Court observes that nearly all of the Plaintiffs' billing entries during this period are either: (i) numerous *de minimis* billings by Mr. Gastman for routine office tasks such as sending or reviewing e-mails; (ii) approximately 3 hours incurred by Mr. Gastman on August 26, 2017 in preparing a demand letter; or (iii) approximately 9 hours cumulatively between Mr. Gastman and Ms. Dodson in mid-September 2017 for preparation of a response to the Defendants' motion to dismiss Ms. Kawahakui's complaint. The Court cannot say that any of these entries are so unreasonable as to warrant the Court's own *sua sponte* rejection of them.

Finally, as to the time incurred by Mr. Gastman preparing for depositions and filing the fee motion, the Court's own review of the billing records reveals Mr. Gastman claiming a total of 13 hours for deposition preparation,[6] plus .5 hours for Ms. Dodson on 2/9/17 to confer with Mr. Gastman about "depo strategy." The Defendants do not identify how many depositions Mr.

---

[6]     1/31/17 (2.0, "Preparation work for 30(b)(6) deposition of PS Camping"); 2/8/17 (3.5, "preparation work for depositions- doc review, legal research, outline drafting"); 2/9/17 (5.7, "Preparation work for depositions- doc review, outlines, research"); 2/13/17  (1.0, "Preparation work for 30(b)(6) PS Campling"); 2/14/17 (.8, "Preparation work for EBTs 30(b)(6) and 2 individs.").

Gastman took – billing records seem to suggest he took three (a Rule 30(b)(6) designee of Defendant PS Camping, and depositions of both Rhonda and Michael Schirado) that consumed a total of 13.5 hours.  In the absence of any other evidence, the Court cannot say that a total of 13.5 hours of preparation for 13.5 hours of depositions is inherently unreasonable.  As to the time expended by Mr. Gastman on preparation of this fee motion, the billing records appear to reflect two entries, on May 1 and May 5, 2017, in which Mr. Gastman expended a total of 3 hours preparing the fee motion.[7]  The Court cannot say that 3 hours for the making of a fee motion is necessarily unreasonable, and the Defendants have not explained further why they believe that time is excessive.

Accordingly, because the Court rejects all the specific challenges made by the Defendants to the number of hours claimed by the Plaintiffs, the Court finds, in the absence of evidence to the contrary, that all claimed hours are reasonable.

## C.  Fee award

Thus, the lodestar calculation yields the following: (i) for Mr. Gastman, 144.6 hours at $250 per hour, totaling $36,150; (ii) for Ms. Dodson, 23.64 hours at $300 per hour, totaling $7,092; and (iii) for Ms. Hodges, 34.8 hours at $125 per hour, totaling $4,350.  The total lodestar figure is therefore $47,592.

The Court notes, however, that the Plaintiffs have made clear that they seek only $42,500 in fees, albeit premised upon the "menu" method.  Although the Court has rejected that method

---

[7]     Ms. Dodson billed an additional  6.76 hours between May 4 and May 19, 2017 for review and revising of the fee motion.  Given that amount of time in addition to Mr. Gastman's own billed time, Ms. Dodson's higher hourly rate, and the fact that the initial motion was devoted solely to the Plaintiffs' meritless "menu" argument, the Court might have been inclined to find some or all of these hours to have been spent unreasonably.  But the Defendants' response to the Plaintiffs' fee motion specifically challenges only Mr. Gastman's time spent on the fee motion, and thus, the Court will not attempt to construct arguments for the Defendants where none were made.

of calculating fees, it is nevertheless clear that the Plaintiffs request only that sum, not some higher amount as an alternative.  Accordingly, although the Court could justify a higher award, the Plaintiffs have self-limited their requested fee award to $42,500, and the Court finds it appropriate to award that amount.

### D.  Costs

The Defendants take issue with two items of costs claimed by the Plaintiffs: (i) attorney travel expenses of $1,132.36; and (ii) "untrackable costs" that the Plaintiffs have valued at $195.

As to travel costs, the Defendants are correct that, under 28 U.S.C. § 1920, attorney travel expenses are not generally considered taxable costs.  *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1180 (10th Cir. 2005).  However, in civil rights cases with fee- and cost-shifting statutes, the statutes themselves give rise to an independent basis for the shifting of costs that might not otherwise be taxable under § 1920.  *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).  In deciding whether to award these costs to a prevailing party, the Court must consider whether they are "items that are normally itemized and billed in addition to the hourly rate," as well as whether they are reasonable in amount.  *Id.*  The Court must ascertain "whether such expenses are usually charged separately in the area," or whether they are typically absorbed by the law firm as overhead; this question "necessarily involves a factual inquiry into the billing practices of law firms in the region who provide services to fee-paying clients."  *Id.*

Because this is a factual inquiry, it requires proof – specifically, proof as to the billing practices of law firms in Colorado.  The Plaintiffs, who bear the burden of proof on the question of costs, have not submitted any such proof.  Even if the Court were to consider the sole case that the Plaintiffs cite to as awarding such costs as proof of the practice in Colorado, that decision makes no such finding: in *Ryals v. City of Englewood*, D.C. Colo. Case No. 12-cv-02178-RBJ,

Docket # 83 (D.Colo. Jun. 6, 2014), the court noted that "Defendant has not objected" to the requested travel costs, and found only that the costs were "necessarily incurred," not that they were routinely billed by law firms in Colorado.  Thus, the Court finds that the Plaintiffs have not carried their burden of demonstrating their entitlement to reimbursement for their travel costs.

As to the "untrackable costs," the Plaintiffs' attorneys' affidavit explains that their Retainer Agreement provides that "In lieu of being billed separately for certain costs, I agree to a standard cost of $195.00 to cover postage for mailings under $5.00 per item, in-house copying, scanning, faxing, and printing, electronic case management and storage, file storage and/or document destruction after closure, and standard case related office supplies such as file folders, binders, and binder clips."  They further state that "This flat fee amount is the firm's good faith reasonable estimate on out of pocket costs actually expended on matters like this one, based on historical internal data, and has been approved by other courts in other similar matters," although no supporting citations are provided.[8]  For the reasons stated above, the Plaintiffs have failed to establish that these are the types of costs that are usually charged separately to fee-paying clients by law firms in Colorado, or whether they are routinely absorbed as overhead.  Even assuming the Plaintiffs had done so, this Court has profound doubts that costs for matters such as electronic case management, file storage, and office supplies can ever be considered anything other than non-recoverable firm overhead.

---

[8]     Notably, in *Delgado v. Bohemian Ligers, LLC*, D.C. Colo. Case No. 16-cv-00397-KMT, a case that the Plaintiffs' counsel's firm litigated in this District and to which the Plaintiffs have cited for other purposes in their reply brief in this matter, Magistrate Judge Tafoya rejected their request for "a random amount of $195.00" in untrackable costs.  *See Docket* # 28 at 10 (D.Colo. Jul. 28, 2017).

Accordingly, the Court declines to award travel costs and untrackable costs to the Plaintiffs, but otherwise approves the unobjected-to portion of the Plaintiffs' request, which totals $1,953.45.

The Plaintiffs' Motion for Motion for Attorney Fees and Costs **(# 56)** is **GRANTED IN PART**, insofar as the Court awards the Plaintiffs attorney fees in the amount of $42,500 and costs in the amount of $1,953.45, and is denied in all other respects.[9]  Pursuant to the instructions

---

[9]      In their reply brief, the Plaintiffs object to the Defendants's response that disclosed the contents of settlement negotiations between the parties.  The Plaintiffs insist that this violates Fed. R. Evid. 408, and cite to *Sample v. City of Sheridan*, D.C. Colo. Case No. 10-cv-01452-WJM-KLM (D.Colo. Apr. 6, 2012), as authorizing sanctions for such misconduct.

The Plaintiffs fundamentally misunderstand Rule 408.  The rule is an underlined evidentiary rule, concerned with when certain evidence may be admitted to prove a certain fact; it is not a universal gag order.  The rule provides that information conveyed in settlement discussions "is not admissible. . . to prove or disprove the validity or amount of a disputed claim."  It further provides that such information underlined can be admitted "for another purpose."  Fed. R. Evid. 408(b).  Here, the Defendants offered it not to prove or disprove the validity or amount of the Plaintiffs' claims, but to establish that the amount the Plaintiffs actually settled for was far below the amount they initially claimed, ostensibly demonstrating that they achieved only partial success in this matter.  This is a purpose permitted under Rule 408.  *See A.D. v. California Highway Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013) ("Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed  in settlement negotiations as evidence of the extent of the plaintiff's success"); *Lohman v. Duryea Borough*, 574 F.3d 163, 168 (3d Cir. 2009) ("While evidence of settlement negotiations is only one indicator of the measure of success, it is a permissible indicator that is not precluded by Rule 408").  To the extent that *Sample* reached a different conclusion, this Court finds it unpersuasive.

in the Court's Order of June 9, 2017 (**# 55**), there having been no objection, the Clerk of the Court shall close this case.

Dated this 24th day of October, 2017.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge